**IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
NORTHERN DIVISION**

**DONNA POPEJOY,**                                                                                    **PLAINTIFF**
on behalf of JEFFERY BROCK

V.                            CASE NO.: 1:10CV00040 BD

**MICHAEL J. ASTRUE, Commissioner,**
Social Security Administration                                                                **DEFENDANT**

<u>**MEMORANDUM OPINION AND ORDER**</u>

Plaintiff Donna Popejoy brings this action on behalf of her deceased son, Jeffery Brock. She is challenging the final decision of the Commissioner of the Social Security Administration ("Commissioner") denying her son's claim for Disability Insurance benefits ("DIB") under Title II of the Social Security Act (the "Act").[1] For reasons that follow, the decision of the Administrative Law Judge ("ALJ") is AFFIRMED.[2]

**I.     <u>Procedural History</u>:**

Mr. Brock filed his application for DIB on March 17, 2005. He alleged disability since April 2, 2002, due to depression, hypertension, headaches, low back and leg pain, and difficulty sleeping. (Tr. 18, 54, 76, 78)

After the Commissioner denied his applications at the initial and reconsideration stages of administrative review, Mr. Brock requested a hearing before an ALJ. The ALJ

---

[1] Mr. Brock died from an accidental overdose of drugs and alcohol on June 3, 2008, before the Commissioner's decision became final. (Tr. 9-10) Ms. Popejoy became the substitute party for Mr. Brock's claim. (Tr. 11-13) Because this case concerns Mr. Brock's alleged disability, the Court will refer to him as the plaintiff in this case.

[2] The Honorable Lesly W. Mattingly, Administrative Law Judge.

held a hearing on September 11, 2007, and Mr. Brock appeared with his attorney, Michael Sherman. (Tr. 652-676)

At the time of the hearing, Mr. Brock was a 32-year-old with a high school education. (Tr. 655-656) He was 5'11" tall and weighed 220 pounds. (Tr. 656) He had past relevant work as a welder. (Tr. 90-96, 672)

At the hearing, the ALJ received testimony from Mr. Brock and vocational expert Dianne Smith. On November 30, 2007, the ALJ issued a decision denying Mr. Brock benefits. (Tr. 18-26) The Appeals Council denied Mr. Brock's request for review on April 30, 2010. (Tr. 3-7) He filed the current Complaint for Review of Decision (docket entry #2) on June 1, 2010.

## II.     Decision of the Administrative Law Judge:

The ALJ followed the required five-step sequence to determine: (1) whether the claimant was engaged in substantial gainful activity; (2) if not, whether the claimant had a severe impairment; (3) if so, whether the impairment (or combination of impairments) met or equaled a listed impairment; (4) if not, whether the impairment (or combination of impairments) prevented the claimant from performing past relevant work[3]; and (5) if so, whether the impairment (or combination of impairments) prevented the claimant from

---

[3] If the claimant has sufficient residual functional capacity to perform past relevant work, the inquiry ends and benefits are denied. 20 C.F.R. § 404.1520(a)(4)(iv).

performing any other jobs available in significant numbers in the national economy. 20 C.F.R. § 404.1520(a)-(g).

The ALJ found that Mr. Brock had not engaged in substantial gainful activity since the onset of his alleged disability (Tr. 19, 25) and found that Mr. Brock's back disorder and anxiety disorder were severe impairments. (Tr. 19, 25) Mr. Brock did not have an impairment or combination of impairments that met or equaled an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 (20 C.F.R. §§ 404.1526). (Tr. 19, 25)

The ALJ determined that Mr. Brock retained the residual functional capacity ("RFC") to perform the full range of light work[4] (Tr. 24-25), but could not perform his past relevant work. (Tr. 24) Using the Medical-Vocational Guidelines and vocational testimony, the ALJ found Mr. Brock "not disabled." (Tr. 24-25)

### III. Analysis:

    A.    *Standard of Review*

In reviewing the Commissioner's decision, this Court must determine whether there is substantial evidence in the administrative record to support the decision. *Slusser v. Astrue*, 557 F.3d 923, 925 (8th Cir. 2009), 42 U.S.C. § 405(g). "Substantial evidence is

---

[4] Light work "involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls." 20 C.F.R. § 404.1567(b).

evidence that a reasonable mind would find adequate to support the ALJ's conclusion." *Nicola v. Astrue*, 480 F.3d 885, 886 (8th Cir. 2007).

In reviewing the record as a whole, the Court must consider both the evidence that detracts from the Commissioner's decision, as well as the evidence that supports decision; but, the decision cannot be reversed, "simply because some evidence may support the opposite conclusion." *Medhaug v. Astrue*, 578 F.3d 805, 813 (8th Cir. 2009)(quoting *Goff v. Barnhart*, 421 F.3d 785, 789 (8th Cir. 2005)).

    B.    *Plaintiff's Arguments*

Mr. Brock claims the findings of the ALJ are not supported by substantial evidence because the ALJ erred: (1) in finding that Mr. Brock retained the RFC to perform a full range of light work; and (2) in rejecting Mr. Brock's testimony. (#11, p. 14-23)

    C.    *Residual Functional Capacity*

The ALJ bears the initial responsibility for assessing a claimant's RFC. *Anderson v. Shalala*, 51 F.3d 777, 779 (8th Cir. 1995). It is the claimant's burden, however, to prove RFC. *Vossen v. Astrue*, 612 F.3d 1011, 1016 (8th Cir. 2010).

Mr. Brock's RFC is what he can do despite his limitations. 20 C.F.R. § 404.1545. In determining a claimant's RFC, the ALJ has a duty to establish, by competent medical evidence, the physical and mental activity that a claimant can perform in a work setting, after giving appropriate consideration to all impairments. *Ostronski v. Chater*, 94 F.3d 413, 418 (8th Cir. 1996). The ALJ must determine the claimant's RFC

4

based on all relevant evidence, including medical records, observations of treating physicians and others, and the claimant's own descriptions of his limitations. *Baldwin v. Barnhart*, 349 F.3d 549, 556 (8th Cir. 2003); *Pearsall v. Massanari*, 274 F.3d 1211, 1217 (8th Cir. 2001). Mr. Brock argues that the ALJ erred in his RFC determination because the medical evidence showed that his back condition would not allow him to perform light work. (#11, p. 14-17)

The ALJ found that Mr. Brock could perform a full range of light work. (Tr. 25) This finding would require Mr. Brock be able to: lift no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds, stand or walk with normal breaks for a total of about 6 hours in an 8-hour workday, sit with normal breaks for a total of about 6 hours in an 8-hour workday, and complete some pushing and pulling of arm and leg controls. (Tr. 24) While the record certainly evidences a severe back impairment, substantial evidence in the record as a whole supports the ALJ's finding that Mr. Brock could perform the physical requirements of light work.

Mr. Brock injured his back in a motor vehicle accident in April 2002. After the accident, he sought treatment fairly regularly for continued back pain. On March 15, 2004, Mr. Brock underwent an MRI which showed a small right-side disc bulge at the L5-S1 with compression of the S1 nerve root. (Tr. 381, 405) Mr. Brock underwent a right-side L5-S1 discectomy on June 21, 2004. (Tr. 376, 386) He was discharged with instructions to avoid strenuous activity and follow up on June 30, 2004. (Tr. 376-377)

On July 31, 2004, Mr. Brock suffered an accidental drug overdose in an apparent attempt to ease his back pain. (Tr. 113-115) Mr. Brock went to the Newport Hospital for back pain on August 15, 2004. (Tr. 154-157) Notes show that Mr. Brock's doctor had not refilled his medication. (Tr. 154) Mr. Brock was given pain medication and an injection of Demerol.[5] (Tr. 154)

On August 31, 2004, Mr. Brock called the VA about his back pain. (Tr. 371-372) He noted that he was prescribed Demerol after his back surgery and was taking over-the-counter Tylenol for pain management. Mr. Brock stated that the Tylenol was not effective and an appointment was scheduled for September 2, 2004. (Tr. 372)

At the September 2, 2004 appointment, Mr. Brock complained of continued back pain. (Tr. 367-371) He noted, however, that the pain level was acceptable. (Tr. 371) Mr. Brock refused to try ultram or Tylenol #3, explaining that they had not helped in the past. He specifically requested Percocet or Demerol. (Tr. 368) The physician assessed Mr. Brock with suspected opioid abuse, continued his medications with an increase in Robaxin for muscle relaxation, and referred Mr. Brock for heat and massage. (Tr. 369) An x-ray taken on September 4, 2004, showed normal vertebral body heights, normal disc spaces, and normal alignment. (Tr. 365)

---

[5] Progress notes from the VA preceding Mr. Brock's visit to the Newport Hospital show some concern over treating Mr. Brock with Demerol. (Tr. 368, 373-374)

Starting in late September, 2004, Mr. Brock began participating in physical therapy. (Tr. 363-366) After approximately two weeks of physical therapy, he indicated that he was feeling better. (Tr. 364) It was noted that his exercises did not appear painful in the clinic. The clinician encouraged Mr. Brock to do his exercises at home, as he was not doing his home program. (Tr. 364)

Mr. Brock continued to suffer back pain, and a follow-up MRI showed prominent scar tissue formation. (Tr. 355) He was not interested in undergoing a L5-S1 fusion to remove the scar tissue. (Tr. 352, 353)

On April 11, 2005, Mr. Brock began receiving treatment from the pain management clinic of the VA. (Tr. 346-350) He continued to receive pain medications, and began taking morphine for his back pain.

On June 29, 2005, Mr. Brock reported that he had lost all of his medications when his wife wrecked his jeep. (Tr. 535) On July 5, 2005, Mr. Brock stated that his medication regimen provided adequate pain control and improved his function. (Tr. 533) The same day, Mr. Brock's appointment in the pain block clinic was canceled until further notice. He was advised to contact his primary care provider if he needed further pain management. (Tr. 532)

On July 26, 2005, Mr. Brock saw Julie Dow, M.D., complaining of back and leg pain. (Tr. 169-171) Mr. Brock stated that he had nerve damage from a jeep flipping on

him while overseas. (Tr 170) Dr. Dow prescribed oxycodone and lorazepam. She noted that there were concerns that Mr. Brock was stealing his wife's medicines. (Tr. 171)

On August 1, 2005, Mr. Brock returned to the VA. (Tr. 518-522) He had apparently missed his neurosurgery appointment due to being in jail for having a weapon in his car. (Tr. 519) The plan was to continue morphine until gone, then wean Mr. Brock off of morphine after he broke his "narcotic contract" with pain management. (Tr. 520) The assessment and plan noted that Mr. Brock's depression and pain were linked. (Tr. 521)

On August 15, 2005, Mr. Brock underwent a consultative physical examination performed by Joe Crow, M.D. (Tr. 161-163) Mr. Brock demonstrated "fall-away tenderness." He could stand straight, get in and out of a chair without difficulty, walk heel-and-toe, and do a full squat, all while grimacing and pointing to areas of discomfort. (Tr. 161) Dr. Crow diagnosed Mr. Brock with post lumbar laminectomy and discectomy with symptom amplification, pain behavior, depression, and narcotic habituation. (Tr. 162) Dr. Crow recommended weaning Mr. Brock off the narcotics, psychological treatment, and continuing prescriptions for muscle relaxants and anti-inflammatory medication. (Tr. 162-163) Dr. Crow found that Mr. Brock was "not disabled from full-time duty with work involving anything other than rather continuous bending and lifting of over 30 pounds." (Tr. 163)

The next day, Mr. Brock saw Dr. Dow for continued back pain. (Tr. 167-168) Dr. Dow noted an improvement in pain, but increased Mr. Brock's oxycodone prescription. (Tr. 168) The record shows that Mr. Brock saw Dr. Dow again on September 23, 2005. (Tr. 165-166) At that appointment, Dr. Dow switched Mr. Brock from oxycodone to morphine sulfate. (Tr. 166)

On September 7, 2005, Alice Davidson, M.D., completed a Physical RFC Assessment concerning Mr. Brock's physical limitations. (Tr. 197-209) Dr. Davidson found that Mr. Brock was limited to the essential requirements of light work, with occasional limitations in stooping and crouching. (Tr. 198-199). No other limitations were noted.

On December 19, 2005, Mr. Brock underwent a caudal epidural block. (Tr. 214) At the time of the procedure, Mr. Brock was "strongly cautioned regarding his multiple medications." (Tr. 214)

Mr. Brock sought treatment for back pain in January, March, May, and August, 2006. (Tr. 252-253, 267, 272-273, 333-334) On November 4, 2006, Mr. Brock overdosed on his wife's Xanax and Ambien. (Tr. 215-250) A history of alcohol abuse, prescription drug abuse, and previous overdoses was noted. (Tr. 220, 222)

Mr. Brock underwent several imaging procedures on his back. He underwent a lumbar spine CT scan on August 24, 2005. (Tr. 291-292) The scan showed a large right paracentral herniated nucleus pulposus impinging on the right S1 nerve. (Tr. 292). On

9

October 12, 2005, Mr. Brock underwent a lumbar spine x-ray. The x-ray showed normal vertebra height and alignment, with intravertebral spaces fairly well maintained, and a slight narrowing of the L5-S1 interspace. (Tr. 278) Lumbar and cervical spine X-rays taken on May 16, 2006, were normal. (Tr. 254, 258) A lumbar CT scan on May 27, 2007, showed a mild annular disc bulge at L4-L5, with disc narrowing and a small-to-moderate-sized right posterolateral herniated nucleus pulposus at L5-S1. (Tr. 611-612) Mr. Brock's S1 nerve root was presumably compromised by the disc herniation. The exiting right L5 nerve root had no obvious compromise. The lumbar alignment and vertebral body heights were within normal limits. (Tr. 612)

Mr. Brock previously declined L5-S1 fusion surgery. (Tr. 352-353) He ultimately died from an accidental overdose of drugs and alcohol on June 3, 2008. (Tr. 9-10)

The medical evidence shows that Mr. Brock clearly suffered from chronic back and leg pain. Much of this evidence, however, was the result of subjective complaints by Mr. Brock. While the objective evidence confirms his back injury, it does not show an injury that would prevent Mr. Brock from performing light work.

Multiple consultative physicians found that Mr. Brock could perform the requirements of light work. (Tr. 161-163, 197-209) The only other limitation in the record was for Mr. Brock to avoid strenuous activity immediately after his back surgery. (Tr. 376) Evidence showing that Mr. Brock could not perform light work is limited to his subjective complaints, which the ALJ found less than fully credible.

D.   *The ALJ's Credibility Determination*

Under 20 C.F.R. § 404.1529, the ALJ must consider all symptoms, including pain, and the extent to which those symptoms are consistent with the objective medical evidence. An ALJ's conclusions may be upheld if the record as a whole supports them. *Dunahoo v. Apfel*, 241 F.3d 1033, 1038 (8th Cir. 2001).

Mr. Brock argues that the objective medical evidence and his extensive treatment with strong pain medication supported his credibility. He also argues that the ALJ wrongly discredited his testimony based on his daily activities. (#11, p. 17-22) The ALJ did not question the existence of Mr. Brock's pain, only the alleged severity. (Tr. 22-24) Ultimately, the ALJ found that Mr. Brock's pain limited him to light work activity. (Tr. 24)

At the administrative hearing, Mr. Brock testified that he could stand for about 30 to 45 minutes before needing a break. (Tr. 665) He would alternate between standing and sitting, although nothing would make his pain go away. (Tr. 665-666) Mr. Brock testified that lifting and carrying 15 to 20 pounds would cause a lot of problems with his back and leg. (Tr. 667) He testified that he spent his days sitting a little bit or standing, trying to be comfortable. (Tr. 667) If true, Mr. Brock could not perform light work. The ALJ found, however, that this testimony was not fully credible.

When discrediting a plaintiff's subjective complaints, the ALJ must consider those complaints under the guidelines set out in *Polaski v. Heckler*, 751 F.2d 943 (8th Cir.

1984). *Polaski* factors include: (1) the plaintiff's daily activities; (2) the duration, frequency, and intensity of pain; (3) precipitating and aggravating factors; (4) dosage, effectiveness, and side effects of medication; and (5) functional restrictions. *Id.* at 948.

First, the ALJ found that the objective medical evidence did not support the level of alleged disabling pain. (Tr. 22) The ALJ also noted that Mr. Brock's reported daily activities did not support a finding of complete disability. (Tr. 22-23) Mr. Brock could care for his personal needs, help with his children's care, do laundry, iron, complete household repairs, shop, prepare meals, manage financial natters, drive, watch television, collect sports cards, and visit with friends. (Tr. 69-72, 83) Mr. Brock argues that the ALJ wrongly discredited his testimony based on his daily activities. (#11, p. 21) The ALJ noted, however, that "the performance of routine daily activities is not conclusive on the issue of the ability to engage in productive, substantial work activity, [but] it is a factor that may be considered by the [ALJ] in conjunction with other evidence." (Tr. 23)

Next, the ALJ considered the duration, frequency, and intensity of Mr. Brock's pain. The ALJ noted that Mr. Brock complained of constant disabling pain, with no relief at any time.

On March 28, 2005, Mr. Brock's physicians stated that he might need an additional surgery to remove scar tissue and stabilize his back. (Tr. 352-353) On May 10, 2005, Mr. Brock acknowledged that he needed another surgery, but was not sure he

wanted to go through with it. (Tr. 79) Mr. Brock ultimately declined the surgery. (Tr. 663)

At the administrative hearing, Mr. Brock testified that the physicians at the VA wanted to perform fusion surgery to correct the problem of his disc pressing on his nerve. (Tr. 662) Imaging showing impingement of Mr. Brock's S1 nerve was the primary, if not only, objective medical evidence supporting Mr. Brock's alleged level of pain. Mr. Brock testified that he declined the surgery because "I didn't feel that my spine and my hip should be joined together." (Tr. 662) The ALJ found that Mr. Brock's refusal to undergo the recommended surgery lessened his credibility. (Tr. 23) Considering Mr. Brock's allegations of constant, disabling pain, there was no error in this finding.

The ALJ next discussed the precipitating and aggravating factors for Mr. Brock's pain. (Tr. 23) Six months after his back surgery, Mr. Brock reported back pain after working on his jeep and doing a lot of bending. (Tr. 305) As previously noted, Dr. Crow determined that Mr. Brock could perform work that did not require continuous bending or lifting over 30 pounds. (Tr. 23, 163) The ALJ noted that the mere fact that work activity might cause some degree of pain or discomfort would not require a finding of disability. (Tr. 23)

The ALJ briefly discussed the dosage, effectiveness, and side effects of Mr. Brock's medications. (Tr. 23) The record shows that Mr. Brock received a number of potent pain medication prescriptions during his treatment. The record also shows, as the

ALJ noted, that Mr. Brock exhibited drug-seeking behavior and suffered several drug overdoses. (Tr. 20, 670)  Dr. Crow also found that Mr. Brock exhibited symptom amplification and narcotic habituation.  (Tr. 162)

On January 11, 2007, Mr. Brock sought treatment for chest pressure.  (Tr. 613-619)  A treatment note states, "[w]ill increase pain medications."  (Tr. 615)  Mr. Brock, however, was not taking any prescribed pain medications at that time.  (Tr. 614)  Mr. Brock sought treatment for a knee injury on May 27, 2007.  (Tr. 607-612)  During this treatment, Mr. Brock underwent a CT scan showing presumed S1 nerve root impingement.  (Tr. 612)  He was still not taking any prescription pain medication.  (Tr. 608)  In June 2007, Mr. Brock reported that he was not taking any prescribed pain medication.  (Tr. 108)  By August 19, 2007, Mr. Brock began seeing a new provider who prescribed hydrocodone.  (Tr. 109)

The ALJ ultimately found that Mr. Brock's medications did not suggest an impairment that would prevent him from performing light work.  (Tr. 23)  Considering the circumstances of this case, with numerous references to narcotic habitation and abuse, there was no error in this finding.

Finally, the ALJ discussed Mr. Brock's functional restrictions.  (Tr. 23-24)  The ALJ noted that Mr. Brock testified he could not lift and carry more than 15 pounds.  Mr. Brock previously indicated, however, that he could lift about 20 pounds, which is the maximum weight the ALJ found Mr. Brock could lift.  (Tr. 73)  The only restrictions

found in the medical record were limitations to light work, limitations on continuous lifting or bending involving no more than 30 pounds, and a restriction on strenuous activity immediately following back surgery. (Tr. 161-163, 197-209, 376)

This Court has no doubt that Mr. Brock suffered back and leg pain. The ALJ acknowledged this when limiting Mr. Brock to light work. The ALJ is in the best position to gauge the credibility of testimony, and those credibility determinations are entitled to some deference. *Estes v. Barnhart*, 275 F.3d 722, 724 (8th Cir. 2002). After reviewing all the evidence, this Court concludes that the ALJ's credibility determination is supported by substantial evidence in the record as a whole.

E.   *Step Five Determination*

Once an ALJ determines that a claimant cannot return to past relevant work, the burden shifts to the Commissioner to show that there are other jobs in the national economy that the claimant can perform. *Medhaug*, 578 F.3d at 813. In this case, the ALJ determined that Mr. Brock could not perform his past relevant work as a welder. (Tr. 24) Mr. Brock argues that the Commissioner failed to carry his burden at step five of the sequential analysis. (#11, p. 22-23) Specifically, he argues that the vocational expert's testimony did not indicate significant numbers of jobs that Mr. Brock could perform.

Mr. Brock argues that the ALJ "simply cannot assume that [the jobs identified by the vocational expert] exist in significant numbers." (#11, p. 23) While the Court agrees with this statement, the record shows that the ALJ did not rely on the vocational expert's

testimony to determine Mr. Brock was "not disabled."  Instead, the ALJ used the Medical-Vocational Guidelines for this determination.  (Tr. 24-26)  The ALJ used vocational evidence to determine transferability of skills.  (Tr. 26, 672-673)

The ALJ noted that the Medical-Vocational Guidelines may direct a conclusion of either "disabled" or "not disabled."  (Tr. 24) He also noted the vocational evidence showing that the skills learned from Mr. Brock's past relevant work as a welder could transfer to light jobs.  (Tr. 24)

The vocational expert testified that Mr. Brock's skills would transfer to light jobs such as metal finisher, sander finisher, metal finish inspector, and weld inspector.  (Tr. 673)  The vocational expert never testified that Mr. Brock could perform those jobs or that significant numbers of those jobs existed.  The vocational expert testified regarding transferable skills, which is one consideration when using the Medical-Vocational Guidelines.

The ALJ did not identify the specific Medical-Vocational Rule used to find that Mr. Brock was "not disabled."  It is clear, however, that substantial evidence in the record would support a conclusion of "not disabled" under either Medical-Vocational Rule 202.20, Rule 202.21, or Rule 202.22.  See 20 C.F.R. Pt. 404, Subpt. P, App. 2, § 202.20-202.22.

"[T]he ALJ may exclusively rely on the guidelines even though there are nonexertional impairments if the ALJ finds, and the record supports the finding, that the

nonexertional impairments do not significantly diminish the claimant's RFC to perform the full range of activities listed in the guidelines." *Reed v. Sullivan*, 988 F.2d 812, 816 (8th Cir. 1993) (citing *Thompson v. Bowen*, 850 F.2d 346, 349-350 (8th Cir. 1988)).  Mr. Brock does not argue that nonexertional impairments significantly diminished his RFC.  When the ALJ found that Mr. Brock's impairments did not diminish his RFC to perform the full range of Guideline-listed, light work activities, he could properly rely on the Guidelines.  *Holley v. Massanari*, 253 F.3d 1088, 1093 (8th Cir. 2001).

## IV.   Conclusion:

The Court has reviewed all of the evidence in the record, including all of the medical evidence, the assessment of the consulting physicians, and the hearing transcript.  There is sufficient evidence in the record to support the Commissioner's determination that Jeffery Brock was not disabled under the Act.  Accordingly, Mr. Brock's appeal is DENIED.  The Clerk is directed to close the case.

IT IS SO ORDERED this 20th day of May, 2011.

_____
UNITED STATES MAGISTRATE JUDGE